UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANCISCO RANGEL,

Plaintiff,

v.  CASE NO.: 8:09-cv-1594-T-17AEP

CAPTAIN HERMAN,
MAJOR LUCAS.

Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS cause is before the Court on Defendants Herman and Lucas' dispositive motion for summary judgment (Doc. 36)[1]. For the reasons set forth below, Defendants' motion will be **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Rangel, who is proceeding in forma pauperis, originally filed a pro se 42 U.S.C. § 1983 civil rights complaint on August 13, 2009. (Doc. 1). He is proceeding on his amended complaint filed November 16, 2009. (Doc. 25).

*Plaintiff's Allegations*

---

[1] The court granted the Hillsborough County Sheriff's Office's motion to dismiss (Doc. 27) on February 25, 2010 (Doc. 34).

1

On December 5, 2008, Rangel was booked into the Orient Road Jail, Hillsborough County, Florida, on one count of first degree murder; five counts of attempted murder in the first degree of a law enforcement officer; three counts of shooting at, within, or into a vehicle; one count of murder in the second degree with a firearm; one count of murder in the second degree with a firearm; one count of fleeing and attempting to elude a law enforcement officer; and two counts of felon in possession of a firearm. (*See* Doc. 36). Rangel contends that from his original detention on December 5, 2008, until July 6, 2009, Defendants wrongfully denied him outside exercise privileges and the opportunity to file grievances in accord with jail procedure for doing so. (Doc. 25) Rangel alleges that the restrictions placed on him in the Hillsborough County Jail violated the Eighth Amendment to the United States Constitution and caused him physical and mental injury. Rangel contends that he suffers from migraines, heartburn, stomach cramps, neck pains, back pains, constipation, lethargy, depression, a bump on his right hand, and a fungus in one of his toe nails. Rangel states that he received medical treatment for these problems. (Doc. 25). Rangel argues that Defendants Herman and Lucas were aware that denying outside exercise posed a substantial risk of harm. He claims that he was not allowed outside exercise until he wrote a letter to Captain Herman contending that the denial of outside exercise violated his Eighth Amendment rights (Doc. 25).

*Inmate Support for Plaintiff's Allegations*

On October 19, 2009, Rangel filed declarations from Raymond Marston and Edward Covington. Marston stated that Defendants denied Rangel outside exercise for seven months. He claims that he heard Rangel be denied a grievance form a few times by supervisors and that

2

Defendants rarely answered Rangel's requests. (Doc. 19). Covington stated that Defendants denied Rangel outside recreation for five or six months and consistently denied his grievances. He claims that Defendants did not treat Rangel equal to similar inmates in the unit and it was only when Rangel informed Major Lucas that his Eighth Amendment rights were violated that Defendants allowed him outside recreation. (Doc. 20).

*Defendant's Allegations*

Defendants contend that there is no evidence that they violated Rangel's constitutional rights; Rangel failed to exhaust his administrative remedies; and Defendants are entitled to qualified immunity. Thus, Defendants argue that based on the pleadings and the record of evidence, they are entitled to summary judgment as a matter of law. Although instructed in the requirements of *Rule 56*, and given an opportunity to respond to Defendants' motion for summary judgment, Rangel has not done so.

## **STANDARD OF REVIEW**

*Federal Rule of Civil Procedure 56 (c)* states that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56 (c)*. The moving party bears the initial responsibility of stating the basis of its motion and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this initial responsibility by "showing that there is an absence of

evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial." *Hickson v. Northern Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991)). When the moving party has discharged this responsibility, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Celotex*, 477 U.S. at 324.

Issues of fact are genuine "only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Id*. The Court must consider all evidence in a light most favorable to the nonmoving party when reviewing the motion, and all reasonable doubts about the facts are resolved in favor of the nonmoving party. *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 483 F.3d 1265, 1268 (11th Cir. 2007) If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which he has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

## DISCUSSION

### A. *Defendants Did Not Violate Plaintiff's Constitutional Rights*

The Eighth Amendment states that punishment inflicted in the United States shall not be "cruel and unusual." *U.S. Const. amend. VIII.*[2] It is only by "the unnecessary and wanton

---
[2] Because Rangel has not yet been convicted of a crime, he is a pretrial detainee and his claim invokes the protections of the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause. However, the applicable standard is the same. *Gross v. White*, 340 Fed. Appx. 527, 530

4

infliction of pain" that the Eighth Amendment is implicated in prisoner civil rights cases. *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The deprivation of rights alleged by prisoners must be "sufficiently serious" and "result in the denial of the minimal civilized measure of life's necessities" to receive consideration under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner must show that his prison conditions pose a "substantial risk of serious harm." *Id.* A punishment is deemed "unnecessary" if it is "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). It is wanton if the prison official acted with a "sufficiently culpable state of mind" such as "deliberate indifference to the inmates' health or safety." *Farmer*, 511 U.S. at 834. A prisoner's civil rights claim will not stand absent these factors.

The Eleventh Circuit has held that restriction from outside recreation does result in the "infliction of pain." *Bass v. Perrin*, 170 F.3d 1312 (11th Cir. 1999). However, such a restriction is constitutional if it is based on proper "penological justification," such as the necessity for the protection of the prison population. *See Rhodes*, 425 U.S. at 346. Defendants booked Rangel in the Orient Road Jail due to his alleged involvement in a series of violent crimes. (Doc. 36). Rangel was known to be a member of the violent gang, "Sur 13". (Doc. 13). Rangel also displayed violent and disruptive behavior that included possessing nuisance contraband, becoming hostile and threatening a deputy, concealing dangerous instruments that could be fashioned into a weapon, banging on his cell door, screaming in his cell, and refusing to take medicine. (Exhibit "F"). Defendants allowed Rangel to participate in indoor recreation, yet he

---

(11th Cir. 2009).

refused. Given Rangel's charges and his violent and disruptive behavior while imprisoned, there is no genuine issue of material fact regarding Rangel's claim that his outside recreation restriction was not justified.

Each week the Confinement Review Committee evaluated Rangel to determine his threat level and each week the committee determined Rangel to be a threat to himself and to the prison population. The Eighth Amendment protections "afford plenty of operating space for the control of dangerously violent detainees and convicted criminals." *Weems v. Lawrence*, 2009 U.S. Dist. LEXIS 68708, *6 (S.D. Ga., June 29, 2009). Defendants worked within that operating space while attempting to control Rangel's violent and disruptive behavior.

As for the second prong of the "unnecessary and wanton infliction of pain" standard, there is no evidence that Defendants showed deliberate indifference to Rangel's health or safety. Major Lucas stated that Defendants closely monitored and evaluated Rangel's conditions and behavior to ensure that he was placed in the correct classification and allowed appropriate privileges. (Exhibit "C"). After Rangel was placed in Administrative Confinement upon entry into jail, a doctor evaluated him on a one-on-one basis for several days. For several months after the one-on-one evaluations, a Confinement Review Committee evaluated Rangel's inmate classification on a weekly basis to ensure that his level of confinement "coincided" with his behavior. *Id.* The committee's findings were the basis for Captain Herman's decision to remove Rangel's telephone and visitation restrictions on January 15, 2009, and Rangel's outside recreation restrictions on July 6, 2009. (Exhibit "D"). Defendants displayed great interest in

Rangel's confinement by regularly evaluating him and finally removing his restrictions once Rangel's violent and disruptive behavior improved.

Defendants also treated Rangel for all of the physical problems that he claims resulted from his lack of outside recreation. (Doc. 25). It is "the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain." *Id.* Not only do Rangel's injuries not constitute "serious harm," as Defendants correctly pointed out in their motion for summary judgment, but Defendants fulfilled their obligation to provide the necessary care to treat Rangel's ailments. Rangel's sixty-three page medical file shows that Defendants treated Rangel for his medical issues, none of which he has shown to be directly related to the outside recreation restriction. (Exhibit "I").

Even in the light most favorable to Plaintiff, there is no genuine issue of material fact as to the alleged violation of Rangel's Eighth Amendment rights. Rangel's outside exercise restriction was based on a penological justification and Defendants showed great interest in Rangel by carefully evaluating his confinement conditions and ensuring that he was provided proper medical attention.

### B. *Plaintiff Did Not Exhaust His Administrative Remedies*

The Prison Litigation Reform Act "("PLRA"), as amended, requires that prisoners who bring an action in federal court with respect to prison conditions must first exhaust all

administrative remedies available. *Porter v. Nussle*, 534 U.S. 516, 520 (2002). This provision of the PLRA is mandatory. *Id.* at 524. The requirement "applies to all suits about prison life, whether they involve general circumstances or particular episodes." *Id.* at 532. The Eleventh Circuit has stated that administrative remedies "are not available to an inmate if prison officials do not respond to grievances or if they prevent the filing of grievances." *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008). Because the "exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits...it is not ordinarily the proper subject for summary judgment." *Id.* at 1374-75. Nonetheless, "a district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have sufficient opportunity to develop the record." *Id.* at 1376.

It is required that for complaints about conditions at county jail, prisoners must complete a grievance process. Rangel was aware of the grievance process, yet failed to file any grievances in regard to his restriction from outside recreation. Rangel completed three Inmate Requests for outside recreation privilege, the last of which Defendants approved on July 6, 2009. (Doc. 1, Exhibit 1). Rangel filed Inmate Request #389828 on June 26, 2009, asking for a "grievance." Defendants directed Rangel to state what the grievance was in reference to. *Id.* In response, Rangel filed Inmate Request #389823 on June 29, 2009, specifying that the requested grievance was in reference to his outdoor recreation restriction. *Id.* Nonetheless, Rangel failed to file a proper grievance for his outside recreation restriction and exhaust the administrative remedies available to him.

Rangel claims that the officers and supervisors on duty denied him "proper grievance procedure." (Doc. 25). He supports this allegation with the declarations of inmates Edward Covington and Raymond Marston who stated that they saw or overheard Defendants deny Rangel grievance forms. (Doc. 19 and 20). However, Rangel filed four different grievance requests during this period. (Exhibit "J"). Rangel's filings demonstrate that he had access to grievance forms and the grievance procedure, but failed to file a grievance in regard to his outside recreation restriction. Instead, Rangel made his requests for outside recreation with the Inmate Request Forms to which Defendants responded. There is no evidence that Defendants failed to respond to Rangel's requests or prevented him from filing grievances.

## C. *Defendants Are Entitled to Qualified Immunity*

Qualified immunity requires courts to enter judgment in favor of a government employee unless the employee's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The goal of qualified immunity is to "avoid excess disruption of government and permit the resolution of insubstantial claims on summary judgment." *Id.* This defense protects "public officials acting within the scope of their discretionary authority and under clearly established law." *Stone v. Peacock*, 968 F.2d 1163, 1165 (11th Cir. 1992). The government employee must establish that "he was acting within discretionary authority when the allegedly wrongful act occurred." *Poulakis v. Rogers*, 341 Fed. Appx. 523, 525 (11th Cir. 2009). The Court must grant qualified immunity unless the Plaintiff "can show: first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officer; and, second, that the

unlawfulness of the defendant's actions was "clearly established" at the time of the incident." *Id.* (citing *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)). Qualified immunity almost always protects the defendants unless "case law, in factual terms" has staked out a bright line of unlawfulness or the language of the statute or constitutional provision specifically prohibits certain behavior. *Poulakis*, 341 Fed. Appx.at 528.

The Defendants in this case acted within their discretionary authority as Captain and Major of the Hillsborough County Sheriff's Office. Major Lucas stated that he placed the outside restriction on Rangel and let it remain for seven months because he deemed Rangel to be a danger to himself and to others. (Exhibit "C"). Captain Herman used her discretion to follow the advice of Major Lucas and the Confinement Review Committee to continue to restrict Rangel until July 6, 2009. (Exhibit "D"). As supervisors in the jail system, it is well within Defendants' discretion to place restrictions on inmates whom they perceive to be dangerous.

As for Plaintiff's burden of proof to discredit qualified immunity, it is already established that Defendants did not violate Rangel's constitutional rights. Also, there is no evidence that the alleged unlawfulness of Defendants' actions was clearly established at the time of the incident. Under the "unnecessary and wanton infliction of pain" standard, Defendants did not violate Rangel's constitutional rights by restricting his outside exercise. There is no relevant case law or a specific constitutional provision that "clearly establishes" Defendants' conduct as unlawful.

Based on the defense of qualified immunity and the arguments set forth above, summary judgment for Defendants is appropriate. Accordingly, it is **ORDERED** that Defendants' motion

for summary judgment (Doc. 36) is hereby **GRANTED** as set out herein. The clerk is directed to enter judgment for the Defendants and to close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 24th day of June, 2010.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.